## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| DR. BOLANLE ADEKORE SOGADE, M.D., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CIVIL ACTION FILE |
| vs. | ) | NO. |
| | ) | |
| NAVICENT HEALTH, INC., | ) | **JURY TRIAL DEMANDED** |
| CATHERINE BROOKE PRICE AS | ) | |
| EXECUTRIX FOR THE ESTATE OF | ) | |
| DR. CHRISTOHER HENDRY, and | ) | |
| MEDICAL CENTER OF CENTRAL | ) | |
| GEORGIA, INC. | ) | |

Defendants.

## COMPLAINT

Dr. Bolanle Adekore Sogade, M.D. ("Dr. Sogade"), Plaintiff in the above-styled action, files this Complaint showing the Court as follows:

## INTRODUCTION

While there are several causes of action based on the Defendants' conduct, at a minimum, this Complaint is based on a very simple proposition: hospitals are required to follow their Medical Staff Bylaws. If a hospital fails to follow its Medical Staff Bylaws, a Court may enter an equitable order requiring the hospital

to abide by its Bylaws. In this instance, at a minimum in order to protect her 18-year practice of seeing and treating patients at the subject hospital operated by Navicent Health, Inc. on behalf of Medical Center of Central Georgia, Inc., Dr. Sogade is entitled to adequate notice and a hearing to defend the frivolous claims disparaging her professional reputation, and to protect her staff membership and clinical privileges. Defendants conspired to prevent Dr. Sogade from having these basic rights, leading to this action.

By this action, Dr. Sogade seeks such an equitable order requiring the hospital defendants to abide by the Bylaws and afford Dr. Sogade the adequate notice and hearing to defend the frivolous claims disparaging her professional reputation, and to protect her staff membership and clinical privileges. Dr. Sogade further seeks an award of compensatory damages, punitive damages, and attorney's fees.

## PARTIES

1.

Navicent Health, Inc. ("Navicent") is a non-profit Georgia corporation and can be served by and through its registered agent, Kenneth B. Banks, at 691 Cherry Street, Suite 700, Macon, Georgia 31201.

1.

Defendant, Dr. Christopher Hendry, M.D. is a resident of Bibb County, Georgia and living at his residence located at 106 Howard Oaks Drive, Macon, Georgia 31210 and can be served at that location.

2.

Defendant Medical Center of Central Georgia, Inc. ("MCCG") was created pursuant to the Georgia Hospital Authority Law, O.C.G.A. 31-7-70 et seq., is a public hospital in Bibb County governed by a Hospital Authority Board, and can be served by and through its registered agent, Kenneth B. Banks, at 691 Cherry Street, Suite 700, Macon, Georgia 31201.

3.

Defendant Navicent is the sole member of Defendant MCCG.

4.

Defendants MCCG and its sole member Navicent, together, operate the public hospital under the name, Medical Center Navicent Health ("MCNH").

6.

Defendants Navicent, MCCG and Hendry are referred to collectively as "Defendants" in this Third Amended Complaint.

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction of this action and has personal jurisdiction over the Defendants and Defendant CGHN in this action.

8.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3.4.10.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this matter involves federal questions arising under 42 U.S.C. § 1983 and 1981.

9.

This court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4) and supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

## FACTUAL BACKGROUND

5.

Dr. Sogade began working at the MCNH in 1997 as a resident in family medicine, then as an OB-GYN resident from 1998-2002.  She was granted privileges to practice in her specialty as an OB-GYN medical doctor at MCNH in 2002 and has been a member of the medical staff with privileges to practice OB-GYN medicine since 2002.  She is female, Black, and originally from Nigeria.

6.

In 2009, in her efforts to provide patient care at MCNH, Dr. Sogade began frequently encountering antagonistic conduct from nurses and staff, who would often engage in passive-aggressive behavior, including delays or refusals to follow Dr. Sogade's directives for patient care and refusals to properly page Dr. Sogade when she was on call.

7.

That same year, Dr. Sogade also began witnessing and speaking out about substandard medical care and unfair treatment of certain patients at MCNH, particularly patients belonging to ethnic minorities and those receiving Medicaid. Dr. Sogade made several complaints via letter to the medical staff and MCNH administration, and through the CQIR, quality incident report, system maintained and controlled by MCNH.

8.

Dr. Sogade continued actively speaking out regarding the substandard medical care and unfair treatment of minority and other patients, as well as about the practices creating a hostile work environment at the MCNH.

9.

Unfortunately, none of Dr. Sogade's complaints were investigated or addressed by MCNH, and MCNH's refusal to address the complaints perpetuated an extremely difficult and sometimes hostile working environment for Dr. Sogade.

10.

In December of 2012, Dr. Sogade submitted several complaints to MCNH, via CQIR, concerning substandard patient care and concerning the hostile working environment.

11.

Dr. Sogade informed MCNH administration that she had reason to believe she was being discriminated against and subjected to a hostile working environment because of her race and gender.

12.

MCNH continued to ignore Dr. Sogade's complaints.

13.

In July 2013, Dr. Sogade submitted a complaint about MCNH's Operating Room Medical Director ("O.R. Medical Director"), a White male physician, making harassing comments to her.  MCNH ignored Dr. Sogade's complaint.

14.

Later that month, however, the O.R. Medical Director assaulted Dr. Sogade as Dr. Sogade was scrubbing in for surgery.  Upon encountering her, the O.R. Medical Director charged upon Dr. Sogade, penned her back against the steel scrubbing sink where she was scrubbing in for surgery, and stood over her yelling about having seen the CQIR filed by Dr. Sogade concerning him.

15.

Dr. Sogade was terrified but managed to free herself, run into the operating room, and yell for help, upon which the O.R. Medical Director retreated.  Dr. Sogade explained to the staff in the operating room what happened and then proceeded to the main operating room control area and informed two other physicians of what had transpired.  Seeing that Dr. Sogade was visibly shaken, the two physicians advised Dr. Sogade to speak with MCNH administration.

16.

After taking a moment to calm herself and regain her composure, Dr. Sogade proceeded to perform the scheduled surgery.

17.

Following the surgery, Dr. Sogade went to speak with the MCNH Chief of Staff about the assault and left a message with his secretary because he was not in his office.  Leaving there, Dr. Sogade sought out the MCNH Chief Executive Officer,

the Director of Quality, and the Department Chair of Anesthesia, all of whom were also unavailable.

18.

Believing she needed to report the assault before she left the MCNH building, Dr. Sogade went back to the operating room control area and asked the coordinator to page an administrator for her. Upon the page, the O.R. Medical Director appeared and began taunting Dr. Sogade saying, "I'm your administrator that you need to talk to!" Dr. Sogade tried to ignore the O.R. Medical Director and asked the coordinator to page another supervisor. The Head Circulating Nurse arrived and the O.R. Medical Director began yelling, "this is a doctor I've been trying to get rid of from here for years!" Dr. Sogade and the Head Circulating Nurse then went into a small office near the operating room control desk to discuss the assault.

19.

About one minute after Dr. Sogade and the supervisor entered the office, the O.R. Medical Director burst into the room and yelled, "actually, we have to take care of this now!" The O.R. Medical Director blocked the door to the small office and Dr. Sogade was terrified. Dr. Sogade yelled for help and then picked up a phone in the room and dialed 9-1-1, upon which the O.R. Medical Director ran out of the room

- 8 -

back into the control area.  In fear for her safety, Dr. Sogade then quickly left the building.

20.

Dr. Sogade later met with the MCNH Chief of Staff about the assault by the O.R. Medical Director.  Dr. Sogade also submitted a formal complaint, via MCNH's CQIR, about the incidents.  Upon information and belief, MNCH took no action whatsoever in response to the incidents and the O.R. Medical Director continued in his employment with no repercussions for assaulting Dr. Sogade or for making the previously reported harassing comments.

21.

In June 2014, Dr. Sogade witnessed and lodged a complaint about MCNH staff's repeated failure to follow cesarean section induction scheduling protocol for several patients under the care of Dr. Sogade's medical practice.  This complaint, however, was also ignored by MCNH.

22.

Unbeknownst to Dr. Sogade when she lodged complaints in June 2014, upon information and belief, MCNH was under investigation by the United States Department of Justice.

23.

In stark contrast to the non-action by MCNH in response to the numerous valid complaints submitted by Dr. Sogade, however, not long after her complaint in June, in October 2014, Dr. Sogade was required to meet with the MCNH Chief of Staff and the Chief Medical Officer to review and assess Dr. Sogade's patient care in response to a bogus CQIR submitted by a nurse.

24.

Dr. Sogade's practice continued to grow in spite of the difficult environment at MCNH, and she became an early adapter in Robotic Sacrocolpopexy, a new surgical technology. Dr. Sogade became well known for this surgical procedure, which provided patients with the service of a robotic non-invasive surgery and allowed patients to recover in a fraction of the time as compared to traditional surgery. Upon information and belief, Dr. Sogade performed by far more robotic cases than any physician in middle Georgia.

25.

Dr. Sogade competed with other physicians who offer obstetrical and gynecological medical services in the middle Georgia market.

26.

Over time it became apparent that she was viewed as a business threat by, among others, Defendant Hendry.

27.

Throughout his tenure as a staff physician at MCNH, upon information and belief, Defendant Hendry engaged in a campaign to discredit Dr. Sogade with the administration of the hospital by submitting bogus CQIRs regarding Dr. Sogade's care of her patients and encouraging certain nurses to do the same.

28.

At various times during Dr. Sogade's tenure with MCNH, Defendant Hendry held certain administrative positions, including Chief of Obstetrics and Gynecology and Interim Chief Medical Officer.

29.

Between March and June of 2015, five bogus CQIRs were submitted regarding Dr. Sogade. Pursuant to the bogus CQIRs, MCNH's Chief Medical Officer, Dr. Faddy Wanna, sent Dr. Sogade a Notice of Credentials Committee Investigation letter dated July 31, 2015, and addressing five purported incidents:

(i) a March 19, 2015 alleged incident of patient abandonment where Dr. Sogade was the on-call physician and a patient presented as an obstetrics outpatient but was transferred to staff attending physician after 91 minutes and multiple unanswered telephone calls to Dr. Sogade's mobile, office, and house which was reportedly disconnected;

(ii)     a March 24, 2015 alleged incident concerning Dr. Sogade never coming to write orders for a post-operative patient in the Post Anesthesia Care Unit;

(iii)    a May 12, 2015 report involving a patient who was instructed to come to obstetrics assessment by Coliseum hospital, which informed the patient there was no fetal heart tones, but the patient allegedly waited for 85 minutes for Dr. Sogade who was in surgery at the time nurse attempted to contact her;

(iv)     a June 28, 2015 incident involving a 112 minute lapse after the nurse first called Dr. Sogade and Dr. Sogade appearing to attend to a patient who presented at MCNH, where Dr. Sogade performed an emergency procedure; and

(v)      a June 29, 2015 incident involved Dr. Sogade allegedly creating a hostile working environment by raising her voice and belittling the circulating nurse in the operating room over changes to the pediatrician selected for the newborn who was being delivered.

30.

The allegations lodged against Dr. Sogade in the CQIRs were false. Among other facts, the hospital RN failed to follow established protocol on file for calling

Dr. Sogade's cellular phone and if she does not answer, then calling Dr. Sogade's home telephone number. Phone records from Dr. Sogade's carrier confirmed that no one from MCNH called Dr. Sogade's home on March 19, 2015, and the MCNH protocol on file for contacting Dr. Sogade and MCNH's own phone system and records readily confirmed that established protocol was not followed. In addition, the RN failed to follow the protocol by not contacting Dr. Sogade's external back-up physician, Dr. Wilson Gray, M.D. in the rare event that Dr. Sogade could not be reached.

31.

Notwithstanding the RN's failure to follow protocol to reach Dr. Sogade or her back-up physician on March 19, 2015, Dr. Sogade retrieved the RN's delayed message from her mobile phone, departed immediately, and arrived at the hospital at approximately 4:40 a.m. Upon arrival, Dr. Sogade discovered that the subject patient had been transferred to a staff physician, who performed a cesarean section, delivered the baby and both the patient and baby were doing well. Dr. Sogade immediately had the attending physician for the patient changed back to herself and assumed care of the patient until the patient's discharge from the hospital. Any conclusion that Dr. Sogade had abandoned the patient is unfounded, arbitrary and capricious.

32.

The July 31, 2015 letter purportedly sought to inform Dr. Sogade that the concerns had been referred to the MCNH Credentials Committee, pursuant to Article 5.A of the MCNH Medical Staff Bylaws (herein "Bylaws"), and requested the Committee "investigate potential issues concerning behavior and conduct that may be lower than the standards of, or disruptive to the orderly operation of MCNH or its medical staff."

33.

At the time the July 31, 2015 letter was allegedly sent, Dr. Sogade was out of the country in Nigeria attending a medical conference.

34.

On July 31, 2015, Ms. Nancy Prather, purportedly emailed Dr. Sogade attaching the July 31, 2015 letter from Dr. Wanna to Dr. Sogade.  However, Dr. Sogade did not receive the July 31, 2015 letter, as the letter was not attached to the email.  Dr. Sogade only received the letter upon her return to her office on or about August 15, 2015.

35.

On August 31, 2015, Dr. Freddy Gaton, M.D., Chief of Staff at Navicent Health's Medical Center Hospital, allegedly wrote a letter to Dr. Sogade purportedly

notifying her that pursuant to section 5.A.3(e) of the MCNH Bylaws "the investigation committee plans to hold a meeting on September 15, 2015 at 7:00 a.m.

36.

On September 15, 2015, Dr. Sogade met with the "Ad Hoc" Committee to discuss the concerns contained in Dr. Wanna's letter of July 31, 2015.

37.

On September 20, 2015, Dr. Sogade wrote an email to Dr. Gaton specifically responding to the issues and concerns raised by the Ad Hoc Committee at the September 15, 2015 meeting.

38.

On September 20, 2015, Dr. Sogade, by separate email and certified mail, expressed her concerns about the hostile environment and the unprofessional treatment that she received at the meeting of the Ad Hoc Committee. Specifically, she noted that she was rudely treated by Dr. Sanford Duke, M.D. and objected to his participation in the peer review process.

39.

Upon information and belief, on October 13, 2015, based on the Ad Hoc Committee's investigation, the committee recommended to the Credentials Committee that Dr. Sogade's privileges be revoked because of (i) the alleged March 19, 2015 patient abandonment and failure to respond; (ii) the alleged June 29, 2015

disruptive behavior and hostile work environment in the operating room; and (iii) Dr. Sogade's tone toward the Ad Hoc committee and her written response following the September 15 meeting were allegedly hostile and she did not show acceptance of responsibility for her lack of response or inappropriate actions.

40.

During and following the meeting of the Ad Hoc Committee, the committee relied upon five patently bogus CQIRs falsely claiming, among other things, that Dr. Sogade had abandoned a patient on March 19, 2015.  Because the hospital's own phone records could confirm that it had not called Dr. Sogade at home on March 19, 2015, among other readily available information, it thus became clear that the information provided by the Ad Hoc Committee to the Credentials Committee was provided with knowledge that it was false or in reckless disregard for the truth or falsity of the information provided.

41.

The antagonistic approach of the Ad Hoc Committee's meeting with Dr. Sogade, and the Ad Hoc Committee's admitted reason for terminating Dr. Sogade's privileges because of her tone at the meeting and in her written response make it evident that the Ad Hoc Committee, among others, was motivated by malice toward Dr. Sogade.

42.

The Ad Hoc Committee and Credentials Committee recklessly disregarded Dr. Sogade's assurances that no one from MCNH called her home on March 19, 2015. Although the Ad Hoc Committee had readily available access to the MCNH protocol on file for contacting Dr. Sogade and to MCNH's own phone system and records, the committee recklessly disregarded looking at that critical and obvious information to discern the truth that Dr. Sogade had not been contacted pursuant to the updated protocol on file and that no one called Dr. Sogade's home number as required. Telephone records from Dr. Sogade's home phone number also confirm that no one from the hospital called her home at any time on March 19, 2015.

43.

In addition, none of the issues or concerns raised by the Ad Hoc Committee or the Credentials Committee involved any harm to a patient or a failure of critical services to any patient.

44.

Upon information and belief, on October 19, 2015, the Medical Executive Committee reviewed the investigation report of the Ad Hoc Committee based upon the information provided that was false and provided with knowledge that it was false or in reckless disregard for the truth or falsity of the information, and adopted

- 17 -

the Credentials Committee's recommendation for revocation of Dr. Sogade's privileges.

45.

The recommendation of the Ad Hoc Committee, the Credentials Committee and the decision of the Medical Executive Committee to revoke Dr. Sogade's privileges were not made after a reasonable effort to obtain the facts of the matter or in reasonable belief that the action was in furtherance of quality health care.

46.

On October 26, 2015, Dr. Sogade wrote a letter to Dr. John Wood, M.D. to respond to specific concerns that the Ad Hoc Committee had raised.  She was unaware of the October 13, 2015 recommendation of the Ad Hoc Committee to the Credentials Committee at that time and the Medical Executive Committee's decision to recommend revocation of Dr. Sogade's privileges.

47.

Upon information and belief, on October 23, 2015, Dr. Christopher Hendry, M.D., acting in his capacity as "Interim Chief Medical Officer," wrote a letter to Dr. Sogade notifying her of the decision of the Medical Executive Committee to revoke her privileges.  The letter purportedly was sent only via Certified Mail <u>Restricted Delivery</u> to Dr. Sogade at 639 Hemlock Street, Macon, Georgia 31201.  The letter,

however, was not ever delivered to Dr. Sogade, and she did not sign for the letter. [1]

Notably, the letter was not emailed to Dr. Sogade, although the hospital had previously emailed correspondence to Dr. Sogade regarding this proceeding. Nor did anyone call Dr. Sogade to inform her of the initial finding, or her right to appeal.

48.

The Certified Mail Return Receipt purportedly indicated that someone had signed for the letter on October 27, 2015. However, Dr. Sogade was not in her office because she was in surgery at MCNH on that date and did not sign for the letter, and none of her office staff received or signed for the certified letter.[2] Neither Dr. Sogade nor her staff can recognize the alleged signature on the copy acknowledging receipt of the letter. [3] To this day, the letter purportedly sent via Certified Mail Restricted

---

[1] Dr. Sogade did not receive the letter until December 7, 2015 – well after the deadline for appeal – when a copy was emailed to Dr. Sogade's attorney from MCNH's attorney, Mr. Robert M. Brennan.

[2] This includes all office staff, including but not limited to the employee named "Samantha," who the Superior Court referenced in its *Order Granting Defendant's Motion to Dissolve Temporary Restraining Order and Denying Plaintiff's Motion for Interlocutory Injunction* at page 7 (Jan. 12, 2016).

[3] The Domestic Mail Manual published by the United States Postal Service Section 503.3.2.2 states that Certified Mail Restricted Delivery permits a mailer to direct delivery only to the addressee and Section 508.1.1.8 requires delivery only to the addressee unless the addressee has designated an agent for delivery in writing on form 3801 or form 3849. Furthermore, Section 508.1.1.7 states "the mail-piece may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the delivery receipt…" Dr. Sogade was in surgery at the time of the purported delivery of the Restricted Delivery Certified Mail and did not sign for the letter. In fact, whoever signed for the Certified Mail did not legibly print their name on the

Delivery to Dr. Sogade has never been delivered to or received by anyone at Dr. Sogade's office or on Dr. Sogade's behalf.

49.

Dr. Sogade did not know of the October 23, 2015 letter and thus did not know that the thirty (30) days required for her to request a hearing on the decision of the Credentials Committee to revoke her privileges began to run on the date of October 27, 2015 (date of alleged receipt), until she received a call from Dr. Hendry on December 3, 2015 -- after the expiration of the date. Dr. Hendry informed Dr. Sogade that he was going into the meeting of the Board of Directors of Navicent Health, Inc. to have them vote to accept the recommendation of the Credential Committee and the Medical Executive Committee to revoke her privileges. Dr. Sogade protested and said that she had not received any notice of the Credentials Committee's decision and had not been given her rights to appeal the decision. However, Dr. Hendry falsely stated that he had sent her the letter dated October 23, 2015 in a manner that only she could have received it. She informed him that she had not received the October 23, 2015 letter. Dr. Hendry stated nonetheless that the time to request a hearing had expired.

---

delivery receipt. Therefore, the purported delivery of the letter does not constitute Special Notice by Certified Mail.

50.

Because Defendants had prohibited Dr. Sogade's right to lodge an appeal, the Board of Directors of MCNH voted to accept the recommendation of the Medical Executive Committee to terminate Dr. Sogade's privileges on December 3, 2015.

51.

The Board of Directors vote to accept the recommendation to terminate Dr. Sogade's privileges was made without providing adequate notice to Dr. Sogade and affording her hearing procedures fair under the circumstances as required by 42 U.S.C. § 11112(A)(3).

52.

On December 4, 2015, Dr. Hendry called Dr. Sogade and indicated that he had a letter that he needed to hand deliver to her.  She stated that she was not in the hospital and could not meet him at that time.

53.

On December 4, 2015, after speaking to Dr. Sogade, Dr. Hendry appeared at Dr. Sogade's clinic the next day and in a disruptive and rude manner, demanded to see Dr. Sogade.   He was informed that Dr. Sogade was in with patients and could not be disturbed.  Dr. Sogade's staff called the Bibb County Sheriff's Department when Dr. Hendry refused to leave and the Sheriff's Department responded to Dr. Sogade's office.  The letter that Dr. Hendry was attempting to hand deliver to Dr. Sogade was

purportedly left with the deputy sheriff responding to the incident. Dr. Saunders' letter was the letter Dr. Hendry sought to hand deliver to Dr. Sogade.

54.

Dr. Sogade did not receive the Special Notice, via the October 23, 2015 letter, as required by the Bylaws Article 5, and was denied her right to a hearing, discovery and counsel as provided in the Bylaws.

55.

Dr. Sogade is entitled to the receipt of Special Notice in a timely manner, a hearing, discovery and representation and assistance of legal counsel and should not be denied the privileges granted to her to practice OB-GYN medicine at the Medical Center Navicent Health hospital without the conduct of proper notice, discovery, representation and hearing of an unbiased decision maker to terminate her privileges. Article 6.A.1 of the Medical Staff Bylaws provides a medical staff appointee of the right to request a hearing on any unfavorable decision by the Medical Executive Committee or the Board regarding revocation of clinical privileges.  Article 6.B.2 of the Medical Staff Bylaws provides in pertinent part as follows:

6.B.2. Request for Hearing

An individual shall have thirty (30) days following the date of the receipt of such notice within which to request the hearing.  The request

- 22 -

shall be in writing and delivered to the Chief Medical Officer within such 30-day period . . .

56.

Dr. Sogade did not receive the letter dated October 23, 2015, or have any prior notice of the letter, until after the MNCH Board of Directors voted to terminate Dr. Sogade's privileges on December 3, 2015. After receiving the October 23 letter on December 7, 2017, Dr. Sogade's attorney made a demand for hearing. Rather than simply granting the right to such a hearing, based on their discriminatory animus towards Dr. Sogade, MCNH's attorney responded that the deadline had expired.

57.

Although MCNH personnel and Dr. Hendry frequently communicated with Dr. Sogade by telephone, electronic mail or hand-delivered correspondence, the Defendants alleged that they sent the "Special Notice" to her office address by Certified Mail Return Receipt Requested, did not call her, email the Special Notice or hand deliver the same.

58.

The law, rules and regulations require a United States Postal Carrier to obtain the name and address of the person to whom the certified letter is delivered and to return the same in the return receipt.

59.

The Certified Mail Return Receipt for the October 23, 2015 "Special Notice Letter" on its face shows that the mail carrier failed to obtain the name of the person to whom the letter was delivered.

60.

Dr. Sogade, by and through her attorney, notified MCNH that she was not given notice of the decision to recommend the Board revoke her privileges and requested a hearing.

61.

On December 14, 2015, a response to Dr. Sogade's request for hearing was sent to Mr. Lovett by Mr. Robert M. Brennan, as attorney to Navicent Health denying her request for hearing.

62.

Further, Dr. Sogade was denied access to her patients and her patient records to enter appropriate notes and facilitate the transfer of her patients.

63.

Dr. Sogade has been denied her privileges without notice of the action taken by the MCNH Board of Directors on the Medical Executive Committee's recommendation of revocation of her privileges at MCNH, without a hearing, discovery or the right to counsel as provided in the Bylaws 5.A.4 (d).

64.

Defendants have sought and accomplished the transfer of several of Dr. Sogade's patients to Defendant Hendry and MCNH staff since the unlawful termination of Dr. Sogade's clinical privileges at MCNH.

65.

Due to Defendants' arbitrary and capricious termination of Dr. Sogade's staff membership and clinical privileges, Dr. Sogade's professional reputation has been stigmatized in such a way to interfere with her ability to obtain privileges with another hospital in the geographic area.

66.

Defendants' arbitrary and capricious termination of Dr. Sogade's staff membership and clinical privileges has caused interference with Dr. Sogade's provider participation agreement with Defendant CGHN, a healthcare provider network. Dr. Sogade's provider participation agreement, as an obstetrician gynecologist, with CGHN is contingent upon her maintaining clinical privileges with MCNH. Approximately 70% of Dr. Sogade's practice is subject to her participation agreement with CGHN.

67.

CGHN has terminated Dr. Sogade's provider participation agreement because she no longer maintains clinical privileges with MCNH. CGHN's

termination of Dr. Sogade's provider agreement has caused Dr. Sogade to suffer irreparable injury which is not adequately compensated by remedies at law, including the loss of patient relationships and effectively her medical practice.

68.

The Defendants, and yet unknown individuals, while acting jointly, maliciously, in concert and under color of state law, sought and conspired to drive Dr. Sogade out of the practice of medicine in the Bibb County area by terminating her medical staff privileges at Defendant MCNH.

74.

The Defendants combined and conspired with each other to maliciously and unlawfully deprive Dr. Sogade of her constitutional rights while acting under color of state law and pursuant to racially discriminatory customs and practices.

75.

All of the unlawful acts complained of were done by the Defendants and were done intentionally, willfully and maliciously, with the specific intent to cause harm to Dr. Sogade.

69.

Defendants knew that the use of the facts and circumstances surrounding Dr. Sogade's care and treatment of the patients was merely a pretext in Defendants'

willful and malicious efforts to revoke Dr. Sogade's medical staff privileges at MCNH.

**COUNT I – DUE PROCESS AND EQUAL PROTECTION VIOLATIONS**

70.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

71.

Defendants are bound by the requirements of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.

72.

Defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1983 for acting while under color of state law to deprive Dr. Sogade of due process by infringing upon Dr. Sogade's property interest in her provider participation agreement with CGHN.

73.

The termination of Dr. Sogade's provider participation agreement with CGHN, due to the loss of her clinical privileges with MCNH, has caused Dr. Sogade to lose most of her patients.

74.

Defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1983 for acting while under color of state law to deprive Dr. Sogade of due process by infringing upon Dr. Sogade's liberty interest in her professional reputation plus income derived therefrom.

75.

Dr. Sogade is Black, a native of Nigeria, and a member of a protected class.

76.

Defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1983 for acting while under color of state law to deprive Dr. Sogade of equal protection of the laws by treating Dr. Sogade in a materially different manner than other physicians, not belonging to her race or national origin, in similar conditions.

77.

Defendants have denied Dr. Sogade of her substantive due process rights by excluding her from staff membership and clinical privileges for arbitrary and capricious reasons unrelated to the operation of the hospital.

78.

Defendants have denied Dr. Sogade of procedural due process rights sufficient to ensure that she had an opportunity to demonstrate that terminating her staff membership and clinical privileges was not justified.

79.

Defendants have denied Dr. Sogade of substantive and procedural due process rights by terminating Dr. Sogade's staff membership and clinical privileges without following MCNH's own bylaws.

80.

Defendants have intentionally discriminated against Dr. Sogade, and other physicians belonging to racial minorities, based upon her race and deprived her of rights to equal protection and due process in violation of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

81.

Defendants are liable individual, jointly and severally for depriving Dr. Sogade of equal protection by selectively enforcing policies, including but not limited to initiating proceedings to "investigate potential issues concerning behavior and conduct that may be lower than the standards of, or disruptive to the orderly operation of MCNH or its medical staff," and terminating Dr. Sogade's staff privileges based on impermissible considerations such as race, gender, and national

origin, or based on a malicious or bad faith intent to injure Dr. Sogade. Dr. Sogade was treated differently from other physicians at MCNH, including but not limited to the O.R. Medical Director.

## COUNT II – 42 U.S.C. § 1981 DISCRIMINATION

82.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

83.

Defendants intentionally discriminated against Dr. Sogade by, among other things, terminating her staff membership and clinical privileges under false pretext for discrimination and by diverting her patients from her to MCNH staff.

84.

The discriminatory actions of the Defendants impaired Dr. Sogade's contracts with her patients and the property interest created by the expectation that the benefits of clinical privileges at MCNH could not be terminated without following the extensive procedure established by the bylaws.

85.

Defendants' actions were based on racial prejudice and intentionally interfered with Dr. Sogade's ability to make and enforce contracts and her equal

enjoyment of the laws and proceedings afforded by the MCNH bylaws and the State of Georgia and U.S. Constitutions.

86.

By improperly terminating Dr. Sogade's privileges, the Defendants also improperly interfered with Dr. Sogade's provider agreement with Defendant CGHN.

87.

Defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1981 for discriminating against Dr. Sogade and depriving her of the ability to make, enforce, and enter into contracts.

## COUNT III – 42 U.S.C. § 1981 RETALIATION

88.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

89.

Dr. Sogade engaged in protected activity under 42 U.S.C. § 1981 by opposing perceived racial discrimination, against herself and others, during the course of practice at MCNH.

90.

Dr. Sogade complained to MCNH administration and lodged CQIRs about the racially discriminatory treatment of minority physicians, including herself, and treatment of minority patients by MCNH.

91.

Defendants retaliated against Dr. Sogade in violation of § 1981 because of her opposition to the discriminatory practices of MCNH, which included subjecting minority patients to substandard patient care and subjecting her to a hostile working environment. Defendants terminated Dr. Sogade's privileges and have hindered her other opportunities because of her complaints concerning Defendants' discriminatory practices based on race.

92.

As a direct and proximate result of Dr. Sogade's protected activity, Defendants subsequently took adverse action against her. As a direct and proximate result of Defendants' retaliatory conduct, Dr. Sogade has suffered and continues to suffer lost earnings and benefits. Dr. Sogade has also suffered severe and grievous emotional distress, anxiety, humiliation and pain and suffering, for which Defendants are liable.

## COUNT IV – VIOLATION OF LEGAL DUTY UNDER O.C.G.A. 51-1-6

93.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

94.

Defendants MCCG and Navicent, doing business as MCNH, are a public hospital, and Defendant Hendry as an officer or agent, are subject to the requirements of O.C.G.A. § 31-7-7, and legally cannot arbitrarily or capriciously deprive physicians of their privileges.

95.

Defendants have violated the requirements of O.C.G.A. § 31-7-7 and are liable individually, jointly and severally pursuant to O.C.G.A. § 51-1-6.

96.

Defendants are also liable individually, jointly and severally pursuant to O.C.G.A. § 51-1-6 for violating the MCNH Medical Staff Bylaws by (a) arbitrarily or capriciously depriving Dr. Sogade of her privileges, and (b) refusing to follow its existing bylaws concerning staff membership and clinical privileges by depriving Dr. Sogade of the required notice and depriving her of a hearing prior to deciding to terminate her privileges.

- 33 -

## COUNT V – TORTIOUS INTERFERENCE

### 97.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

### 98.

Defendants are liable individually, jointly and severally pursuant to O.C.G.A. § 51-1-9 for tortious interference with business relations and tortious interference with contractual relations of Dr. Sogade and her patients and prospective patients.

### 99.

Defendants have stolen Dr. Sogade's patients and routed them to the MCNH staff service. Upon information and belief, Defendant Hendry has perpetuated false rumors that Dr. Sogade is no longer in the geographic area.

### 100.

Defendants have interfered with Dr. Sogade's provider agreement with CGHN by interrupting benefits Dr. Sogade is entitled to under that agreement. As early as August 2015, Dr. Sogade's patients began reporting to her that they were unable to find her among the obstetrician and gynecologic providers in the provider directory as required for the purposes of her patients' insurance coverage. Upon information and belief, Defendants caused Dr. Sogade's name to be removed

from the list of providers in the CGHN directory, along with the name of her medical practice partner.

101.

Dr. Sogade has lost patients and income as result of Defendants' conduct.

**COUNT VI – DEFAMATION**

102.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

103.

The Defendants are liable individually, jointly and severally pursuant to O.C.G.A. §§ 51-5-1, 51-5-4, and 51-5-9 for defamation for reporting that Dr. Sogade has been negligent and/or incompetent as a physician and had engaged in conduct related to quality of care issues and for reporting that Dr. Sogade had abandoned her patient or engaged in conduct that may pose a danger to patients. Such false reporting by Defendants amounts to defamation *per se*.

104.

Dr. Sogade has been injured in the form of lost patients and income, and by the lost opportunity to contract with another hospital.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### 105.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

### 106.

Defendants' conduct toward Dr. Sogade was willful, wanton, and intentional, and such conduct would naturally humiliate, embarrass, and outrage Dr. Sogade.

### 107.

Dr. Sogade has suffered severe emotional distress with physical manifestations as a result of Defendants' conduct.

### 108.

Defendants are liable to Dr. Sogade for intentional infliction of emotional distress.

## COUNT VIII -- INJUNCTIVE RELIEF

### 109.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

110.

Dr. Sogade has no adequate remedy at law to prevent Defendants from denying her right to a hearing under the Bylaws.

111.

Defendants should be enjoined from continuing to preclude Dr. Sogade from her right to a hearing and should be required to provide her a hearing.

## COUNT IX -- ATTORNEYS' FEES AND COSTS

112.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

113.

By and through their conduct relating to the above counts, Defendants have been stubbornly litigious, acted in bad faith, and caused Dr. Sogade unnecessary trouble and expense.

114.

Pursuant to O.C.G.A. § 13-6-11, as a result of Defendants' improper and wrongful conduct, Dr. Sogade is entitled to recover the costs of litigation, including reasonable attorney's fees.

115.

Defendants are liable individually, jointly and severally pursuant to 42 U.S.C. § 1988 for all costs and attorney fees associated with the prosecution of this action.

## COUNT X – PUNITIVE DAMAGES

116.

Dr. Sogade adopts and incorporates the preceding paragraphs above as if fully restated herein.

117.

Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to the consequences.

118.

Dr. Sogade is entitled to punitive damages under O.C.G.A § 51-12-5.1 in an amount to be determined at trial.

WHEREFORE, Plaintiff Dr. Sogade prays for the following relief against the defendants:

A.      That Plaintiff's staff membership and clinical privileges at MCNH be immediately reinstated subject to the condition that she is provided a full hearing before a hearing panel comprised of physicians or laypersons not connected with

MCNH, and that Plaintiff is afforded all pre-hearing, hearing, and post-hearing procedures, including but not limited to the right to request documents, and the right to counsel as provided in the MCNH Bylaws Article 6;

B.  That Plaintiff recover compensatory damages from Defendants Navicent, MCCG and Hendry individually, jointly and severally and said amount to be determined at trial;

C.  That Plaintiff recover exemplary and/or punitive damages from Defendants Navicent, MCCG and Hendry individually, jointly, and severally, in an amount to be determined at trial;

D.  That Plaintiff be granted a trial by jury with respect to all issues triable to a jury;

E.  That Plaintiff recover all costs and attorney's fees associated with the prosecution of this action;

F.  That Plaintiff be awarded prejudgment interest at the maximum rate allowable by law from the date of the filing of the Original Complaint, to the date of judgment; and

G.  That Plaintiff have such other and further relief as the Court deems equitable, just and proper.

Respectfully submitted, this 15th day of September, 2020.

*/s/ Job J. Milfort*
Job J. Milfort, Esq.
Georgia Bar No. 515915
Oscar Prioleau
Georgia Bar No. 588510
Prioleau, Milfort & Rivers, LLC
3800 Camp Creek Parkway
Building 1800, Suite 124
Atlanta, Georgia 30331588510
Ph: (404) 681-4886
Fax: (404) 920-3330
Email: job@pmlawteam.com