**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**BOLANLE ADEKORE SOGADE, M.D.**,

      Plaintiff,

v.                                   Civil Action No. 5:20-CV-369 (HL)

**NAVICENT HEALTH, INC., CATHERINE BROOKS PRICE as Executrix for the Estate of CHRISTOPHER A. HENDRY, M.D., and MEDICAL CENTER OF CENTRAL GEORGIA, INC.**,

      Defendants.

**ORDER**

This case arises out of Defendants Navicent Health, Inc., the Medical Center of Central Georgia, and Christopher A. Hendry, M.D.'s December 2015 decision to terminate Plaintiff Bolanle Adekore Sogade, M.D.'s ("Dr. Sogade") medical staff membership and clinical privileges. Dr. Sogade alleges pursuant to 42 U.S.C. §§ 1981 and 1983 that Defendants are liable for unlawfully discriminating and retaliating against her based on her race and national origin. She additionally asserts several state law claims relating to her termination.

Before the Court is Defendants' Motion to Dismiss. (Doc. 4). Defendants argue that Dr. Sogade's claims are barred by the applicable statutes of limitation. Defendants further assert that Dr. Sogade's claims arising under § 1983 fail as a matter of law because Defendants are not state actors nor did they act under

color of law. For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Dr. Sogade is an OB-GYN medical doctor formerly employed by the Medical Center Navicent Health ("MCNH"). (Doc. 1, ¶ 5). She first began working at MCNH as a resident in 1997. (*Id.*). In 2002, she became a full member of the medical staff with privileges to provide OB-GYN care. (*Id.*). Dr. Sogade is a black woman originally from Nigeria. (*Id.*).

Dr. Sogade alleges that beginning in 2009, she began witnessing "substandard medical care and unfair treatment" of patients who belonged to ethnic minority groups and who received Medicaid. (*Id.* at ¶¶ 7-8). Dr. Sogade expressed her concerns to the medical staff and administration via letter and through the hospital's quality incident reporting system ("CQIR"). (*Id.* at ¶ 7). Around this same time, Dr. Sogade began experiencing negative treatment. (*Id.* at ¶ 6). She alleges that the nurses and staff engaged in antagonistic, passive-aggressive behavior toward her, refusing to follow Dr. Sogade's patient care instructions and failing to page her when she was on call. (*Id.*). Dr. Sogade alleges that MCNH refused to address her complaints. (*Id.* at ¶ 9).

In December 2012, Dr. Sogade submitted several complaints concerning substandard patient care and an alleged hostile work environment. (*Id.* at ¶ 10). She expressed her belief that she was being discriminated against based on her

2

race and gender. (*Id.* at ¶ 11). Dr. Sogade claims that MCNH again took no action to resolve her complaints. (*Id.* at ¶ 12).

Dr. Sogade alleges that she continued reporting allegedly discriminatory and harassing practices at the hospital. In July 2013, she initiated a complaint against MCNH's Operating Room Medical Director, a white male, after he made harassing comments toward her and later purportedly assaulted her. (*Id.* at ¶¶ 13-20). In June 2014, Dr. Sogade lodged a complaint concerning staff members' repeated failure to follow proper protocol for cesarean section induction. (*Id.* at ¶ 21). Dr. Sogade contends that MCNH ignored each of her complaints. (*Id.* at ¶¶ 20-21).

Between March and June of 2015, the hospital received five complaints concerning Dr. Sogade. (*Id.* at ¶ 29). MCNH's Chief Medical Officer, Dr. Faddy Wanna, issued Dr. Sogade a Notice of Credentials Committee Investigation Letter dated July 31, 2015, which addressed reported incidences of Dr. Sogade failing to answer her phone and report to the hospital while she was the on-call physician; failing to write orders for a post-operative patient; raising her voice at a nurse in the operating room; and delaying over an hour to meet with a patient. (*Id.*). Dr. Sogade claims these reports were all false. (*Id.* at ¶ 30).

The complaints were referred to the MCNH Credentials Committee for investigation of "potential issues concerning behavior and conduct that may be lower than the standards of, or disruptive to the orderly operation of MCNH or its

medical staff." (*Id.* at ¶ 32). Dr. Sogade met with the investigation committee on September 15, 2015. (*Id.* at ¶ 36). On September 20, 2015, Dr. Sogade wrote an email to Dr. Freddy Gaton, MCNH's Chief of Staff, responding to the issues and concerns raised at the committee meeting. (*Id.* at ¶ 37). That same day, Dr. Sogade corresponded separately with the committee by email and certified mail, expressing "her concerns about the hostile environment and the unprofessional treatment that she received at the meeting" with the investigation committee. (*Id.* at ¶ 38).

On October 13, 2015, the investigation committee recommended that the Credentials Committee revoke Dr. Sogade's privileges at MCNH. (*Id.* at ¶ 39). On October 19, 2015, the Medical Executive Committee reviewed the investigation committee's report and adopted the recommendation that Plaintiff's privileges be revoked. (*Id.* at ¶ 44). On October 23, 2015, Dr. Christopher Hendry, acting as Interim Chief Medical Officer, wrote Plaintiff a letter notifying her of the Medical Executive Committee's decision to revoke her privileges. (*Id.* at ¶ 47). Dr. Sogade alleges that while the certified mail receipt indicates that someone in her office signed for the letter, she never received the letter. (*Id.* at ¶¶ 47-49). Consequently, Dr. Sogade did not become aware until December 3, 2015 that the time for her to request a hearing challenging the decision to revoke her privileges had expired. (*Id.* at ¶ 49). On that date, she received a call from Dr.

Hendry informing her that he was recommending that MCNH's Board of Directors accept the recommendation to revoke Dr. Sogade's privileges. (*Id.*).

MCNH's Board of Directors voted to terminate Plaintiff's privileges to practice at MCNH on December 3, 2015. (*Id.* at ¶ 50). Dr. Sogade alleges this decision was made without providing her with adequate notice and affording her a fair hearing as required by 42 U.S.C. § 1112(A)(3). (*Id.* at ¶ 51). The next day, Dr. Hendry called Dr. Sogade to notify her that he intended to hand deliver a letter to her. (*Id.* at ¶ 52). Dr. Hendry went to Dr. Sogade's clinic; however, she was seeing patients and did not break to speak with him. (*Id.* at ¶ 53). According to Dr. Sogade, Dr. Hendry "demanded" to see her "in a disruptive and rude manner." (*Id.*). Dr. Sogade's staff responded by calling the Bibb County Sheriff's Department. (*Id.*). When the responding deputy arrived at the clinic, Dr. Hendry gave the letter to the deputy. (*Id.*).

Dr. Sogade filed suit in Bibb County Superior Court on December 22, 2015, seeking a temporary restraining order ("TRO") to maintain her privileges at MCNH, among other requested relief.[1] In January 2016, the Superior Court dissolved the TRO and denied further injunctive relief. Dr. Sogade appealed the trial court's order to the Georgia Court of Appeals. The Court of Appeals affirmed the trial court's order and remanded for further proceedings.

---

[1] Dr. Sogade's Complaint does not outline the litigation history of her state court proceedings. The Court derived the procedural information outlined here from the parties' briefing of the pending motion to dismiss.

On remand, Defendants moved to dismiss Dr. Sogade's Complaint. Dr. Sogade responded by filing her second amended complaint in the Superior Court on May 29, 2017. (Doc. 9-2). Dr. Sogade's second amended complaint is nearly identical to her Complaint filed in this Court. The Superior Court dismissed Dr. Sogade's second amended complaint for failure to state a claim. Dr. Sogade again appealed to the Georgia Court of Appeals. On June 27, 2019, the Court of Appeals reversed the Superior Court's dismissal and remanded the case back to the Superior Court. The parties then engaged in discovery until the COVID-19 pandemic brought the case to a halt. Plaintiff moved to voluntarily dismiss the Superior Court case without prejudice on July 22, 2020. Plaintiff filed her case in this Court on September 15, 2020.

## II.   MOTION TO DISMISS STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,1273 n.1 (11th Cir. 1999). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint need not contain detailed factual allegations, it must provide "more than labels or conclusions, and a formulaic

6

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The allegations "must be enough to raise a right of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678. Further, while a court must accept all factual allegations in a complaint as true, this principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 556 (citation and internal quotations omitted).

## III.   DISCUSSION

Dr. Sogade's Complaint asserts several federal and state law claims against Defendants. First, she alleges pursuant to § 1983 that Defendants violated the equal protection clause as well as her procedural and substantive due process rights. She brings race discrimination and retaliation claims under § 1981. Finally, Dr. Sogade raises state law tort claims for tortious interference,

7

defamation, intentional infliction of emotional distress, and breach of a legal duty under O.C.G.A. § 51-1-6.

Defendants argue that each of Dr. Sogade's claims is barred by the relevant statute of limitations. Alternatively, Defendants contend that even if Dr. Sogade's § 1983 claims are not time barred, those claims still are subject to dismissal as a matter of law because Defendants are not state actors and did not act "under color of law." Upon review of the pleadings, the Court concludes that Dr. Sogade did not properly invoke Georgia's renewal statute, O.C.G.A. § 9-2-61. Her claims are therefore barred by the applicable statutes of limitation.

It is undisputed that Dr. Sogade's claims accrued when MCNH terminated Dr. Sogade in December 2015. She did not file her lawsuit in this Court until September 2020, nearly five years later. The statute of limitations has run on all her claims. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Georgia, the relevant statute of limitations for personal injury claims is two years. O.C.G.A. § 9-3-33. This same statue applies to bar Dr. Sogade's claims for intentional infliction of emotional distress and alleged violations of O.C.G.A. § 51-1-6. *Id.* Under Georgia law, "injuries to the reputation," like Dr. Sogade's defamation claim, must be "brought within one year." *Id*.

8

Dr. Sogade's § 1981 claim is governed by the four-year statute of limitations imposed in 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383–84 (2004) (concluding that the plaintiffs' wrongful termination claim under § 1981 was subject to four-year statute of limitations (citing 28 U.S.C. § 1658)); *Davis v. S. States Co-op., Inc.*, No. 7:10-cv-133 (HL), 2011 WL 794232, at *2 (Mar. 1, 2011) ("Plaintiff's § 1983 claims assert that he was wrongfully terminated from his employment. . . . The four-year catch all statute of limitations therefore applies."). Dr. Sogade's tortious interference claim likewise is subject to a four-year statute of limitations. *See Lee v. Gore*, 221 Ga. App. 632, 633 (1996).

Dr. Sogade did not commence suit in this Court for nearly five years after her alleged injury accrued. Accordingly, absent some savings provision, Dr. Sogade's claims exceed the requisite limitations periods. Dr. Sogade argues that under Georgia's renewal statute, her claims are not time barred. She further maintains that the Court should deny Defendants' motion to dismiss on equitable principles.

### A.    Renewal Statute

In her response to Defendants' motion to dismiss, Dr. Sogade invokes Georgia's renewal statute in an attempt to save her claims. The renewal statute provides:

> When any case has been commenced . . . within the applicable
> statute of limitations and the plaintiff discontinues or dismisses the
> same, it may be recommenced in a court of this state or in a federal
> court either within the original applicable period of limitations or
> within six months after the discontinuance or dismissal, whichever is
> later.

O.C.G.A. § 9-2-61(a). This statute must be "liberally construed so as to preserve the right to renew the cause of action set out in a previous suit, wherever the same [was] disposed of on any ground other than one affecting the merits." *Chandler v. Opensided MRI of Atlanta, LLC*, 299 Ga. App. 145, 156 (2009) (quoting *Clark v. Newsome*, 180 Ga. 97, 101 (1935)). Nevertheless, for a suit to survive a motion to dismiss, a plaintiff seeking to invoke the renewal statute must demonstrate entitlement to file a renewal suit and establish that she followed the proper procedure. *See Whitesell v. Ga. Power Co.*, 341 Ga. App. 279, 281 (2017). It is well settled that,

> in order to show the right to renew the suit within six months after the
> dismissal of a prior suit on the same cause of action, when such
> right is relied upon to relieve the plaintiff of the bar of the statute of
> limitation, it is necessary for the renewal petition to show
> affirmatively that the former petition was not a void suit, that it is
> such a valid suit as may be renewed under O.C.G.A. § 9-2-61, that it
> is based upon substantially the same cause of action, and that it is
> not a renewal of a previous action which was dismissed on its merits
> so that the dismissal would act as a bar to the rebringing of the
> petition.

*Id.* (quoting *Belcher v. Folsom*, 258 Ga. App. 191, 192 (2002)); *see also Jester v. Emerson Climate Tech., Inc.*, No. 20-13147, 2021 WL 942781, at *3 (11th Cir. 2021).

10

Here, Dr. Sogade voluntarily dismissed her case in Bibb County Superior Court on July 22, 2020. She filed the present case in this Court on September 15, 2020. While Dr. Sogade filed her lawsuit in federal court within six months of dismissing the state court action, her Complaint fails to plead affirmatively that this case is a properly filed renewal suit. She has not pled that the earlier action was not void; that this lawsuit is a valid lawsuit capable of renewal under O.C.G.A. § 9-2-61; that this lawsuit is based on substantially the same cause of action as the earlier action; and that the previous dismissal was not on the merits. *See Belcher*, supra. 258 Ga. App. at 192. In fact, Dr. Sogade's Complaint makes no mention of the original state court lawsuit. "[W]hen a party disregards the requirements clearly stated by [Georgia courts], the harsh result of dismissal can result." *Whitesell*, 341 Ga. App. at 282.

The Court first learned of the earlier action through Dr. Sogade's response to Defendants' motion to dismiss. The Court acknowledges that Dr. Sogade attached portions of the record from the state court action to her response; however Dr. Sogade has pointed to no case law suggesting that this later-filed evidence demonstrates compliance with the renewal statute. *See Deems v. Colgate-Palmolive Co.*, No. 4:19-CV-00105-HLM, 2019 WL 9633222, at *4 (N.D. Ga. Oct. 22, 2019) (dismissing lawsuit where amended complaint pled no facts relating the current lawsuit to a previous lawsuit and attached no part of the record of the prior suit); *but see Brantley Cnty. Dev. Partners, LLC v. Brantley*

*Cnty., Ga.*, No. CV 5:19-109, 2021 WL 4005608, at *9-10 (S.D. Ga. Sept. 2, 2021) (agreeing to take judicial notice of prior state court filings where amended complaint included language that the complaint was filed as a renewal action and that prior petition had been voluntarily dismissed pursuant to O.C.G.A. § 9-11-41 in order to file the federal complaint). As expressed in *Deems*, "[t]his Court understands Georgia law to require that a plaintiff seeking to avoid the statute of limitations must establish in her complaint, or in exhibits thereto, that her lawsuit is a valid renewal. Evidence produced in response to a later motion to dismiss is not adequate."  2019 WL 9633222, at *4.

The Court finds that Dr. Sogade's Complaint is not an effective renewal of her state court lawsuit. Consequently, Dr. Sogade's claims are not timely and must be dismissed.

Even if Dr. Sogade properly pled her Complaint as a renewal action, Georgia's renewal statute will not save her § 1981 claim. Federal courts "look[] to state law to define the time limitation applicable to a federal claim only when Congress has failed to provide a statute of limitations for a federal cause of action." *Phillips v. United States*, 260 F.3d 1316, 1218 (11th Cir. 2001). Section 1981 does not have a statute of limitations provision. As discussed above, however, the Supreme Court has held that 28 U.S.C. § 1658 governs Plaintiff's wrongful termination claim under § 1981. *Jones*, 541 U.S. at 384–85. "Congress enacted [§ 1658,] a catchall 4-year statute of limitations[,] for actions arising

under federal statutes enacted after December 1, 1990." *Id.* at 371. Plaintiff's wrongful termination claim arose from statutory language amending § 1981 that Congress enacted in 1991. *Id.* at 383. Congress has provided a federal statute of limitations, 28 U.S.C. § 1658, and the Court cannot consult state law to extend the statutory period. The Georgia renewal statute is thus inapplicable to Dr. Sogade's § 1981 claim. Accordingly, because more than four years has elapsed since Dr. Sogade's alleged injury, her § 1981 claim is barred.

### B.   Equitable Tolling

Dr. Sogade argues that Defendants' motion to dismiss should be denied based on the principles of equitable estoppel and tolling. Her position is that any delay in the initiation of the present lawsuit stems from her need to defend against Defendants' "tactics" in the state court proceedings, including two appeals to the Georgia Court of Appeals. (Doc. 8, p. 11). Dr. Sogade represents that she has diligently pursued her claims against Defendants since 2015 and that allowing her to continue her pursuit will in no way prejudice Defendants, who have "vigorously defended against" her claims. (*Id.*). Dr. Sogade's arguments are unavailing.

Under the doctrine of equitable tolling, "plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 2008). Tolling is "appropriate when a movant untimely files

because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 117 F.3d 1269, 1271 (11th Cir. 1999). As the Supreme Court has stated, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

There is nothing extraordinary about the circumstances presented here. Dr. Sogade made the strategic decision to file her original lawsuit in state court. She successfully defended against Defendants' motion to dismiss her amended complaint before both the state court and the Court of Appeals, and the parties were engaging in discovery before the COVID-19 pandemic halted the proceedings. It was at that time Dr. Sogade again made a calculated decision to voluntarily dismiss the state court action and file in federal court. Dr. Sogade's failure to properly plead the federal action under Georgia's renewal statute is not an "unusual circumstance[ ]" but rather "an entirely common state of affairs." *Id.* There being no evidence that submitting a proper pleading was beyond Dr. Sogade's control, the Court finds that equitable tolling is not appropriate.

## IV.   CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss is **GRANTED**. (Doc. 4). Plaintiff's Complaint is **DISMISSED**.

**SO ORDERED**, this 24th day of September, 2021.

_**s/ Hugh Lawson**_____
**HUGH LAWSON, SENIOR JUDGE**

kac